United States District Court for the Southern District of New York

500 Pearl Street

New York, New York 10007-1312

Vincent McCrudden

(Plaintiff)

                                  Complaint For Civil Monetary
                                  Penalties and other statutory
                                  And equitable relief

                                  **JURY DEMANDED**

v.

United States of America,

US Department of Justice,

Federal Bureau of Investigation

Bureau of Prisons

Warden Donna Zickefoose

Lieutenant Anderson

Four John Does

("Defendants")

                **I.   Complaint**

Plaintiff, Vincent McCrudden, acting Pro Se, complaining of the defendant, United States of America, et. Al, respectfully state and allege upon information and belief as follows:

## II. Jurisdiction

1. This action is brought under the Federal Tort Claims Act ("FTCA") and this court has original jurisdiction pursuant to Section 28 USC 1346(b).

## III. Parties

2. United States of America is a sovereign authority.
3. The Department of Justice is a US Government Agency.
4. Eric H. Holder is the United States Attorney General
5. FBI is a US Government Enforcement Agency
6. Lieutenant Anderson is a Correctional Officer employed by the Bureau of Prisons and stationed at Fort Dix during the time of the complaint.
7. Four John Does are Correctional Officers employed by the Bureau of Prisons and stationed at Fort Dix during the time of the complaint.
8. Warden Donna Zickefoose is the Warden of FCI Fort Dix, employed by the BOP and was in charge of FCI Fort Dix at the time of the complaint.
9. Plaintiff Vincent McCrudden is a citizen of the United States and was born and raised in New York. McCrudden worked on Wall Street for 25 years and either executed or traded hundreds of billions of dollars of sophisticated financial instruments for the top financial firms in the world. He has never had a customer complaint. In 2008 and 2009, McCrudden ran a successful hedge fund that was ranked as one of the best multi strategy funds in the world. McCrudden is twice a survivor of the WTC terrorist attacks and lost 23 friends on 9/11. McCrudden is father to two children. McCrudden was extorted to plead guilty to a violation he was innocent of which unfortunately found himself unlawfully imprisoned at Fort Dix.

### IV. Other Related Parties

10. CO Morey is a Correctional Officer employed by the Bureau of Prisons and stationed at Fort Dix during the time of the complaint.

11. Mr. Darville was a business manager while at Fort Dix during the time of the complaint and was the officer on duty in the Plaintiff's dorm at the time of the complaint.

12. Ms. Johnson was a nurse at Fort Dix at the time of the complaint.

13. Lieutenant Sheridan is a Correctional Officer employed by the Bureau of Prisons and stationed at Fort Dix during the time of the complaint.

14. CO Harrell is a Correctional Officer employed by the Bureau of Prisons and stationed at Fort Dix during the time of the complaint.

15. CO Melsky is a Senior Correctional Officer assigned to the Plaintiff's dorm.

16. Percy Johnson is a Special Investigator Agent for the Bureau of Prisons.

17. Director Charles E. Samuels is the Northeast Region of the BOP.

### IV. Facts

18. On August 31, 2012 at approximately 3:30pm EST, the Plaintiff was assaulted, beaten, verbally abused and threatened by employees of the Bureau of Prisons and Fort Dix, Lieutenant Anderson and four unknown Correctional guards.. The exact description of the assault is attached (Exhibit A) in the plaintiff's own handwriting at the time of the incident.

19. There was no valid legal reasons for the assault and neither Lieutenant Anderson nor the other guards were in the process of "pursuing a law or statute" or in the process of "search

or seizure" as required by law. Furthermore, the Plaintiff believes the assault was predicated on racial profiling in violation of criminal law and civil rights violations.

20. According to an internal email program called TRULINCS, the Plaintiff wrote a detailed account of the assault labeled "Urgent" and sent it to his sister with a timestamp of 8/31/2012 at 10:42:30pm EST.

21. On 9/1/2012 at 8:26:49 AM EST, the Plaintiff wrote an email labeled "Urgent 2" to the same sister explaining his attempt to seek medical treatment and was denied.

22. On 9/1/2012 at 3:12:58 PM, after receiving a visit from his fiancé, the Plaintiff wrote another email to his sister labeled "Hi Mary". The email confirms the sister receiving the previous emails and also corrects the wrong days the Plaintiff had confused. The Plaintiff expresses his fear of another assault and retaliation if he reports the assault while still incarcerated. The Plaintiff suggests his sister contact the FBI as the assault was on federal property, in violation of federal laws and the assault executed by federal officials.

23. Between 9/1/2012 and 9/11/2012, the Plaintiff contacted his Dorm CO Melsky and explained in confidence what transpired on 8/31/2012. CO Melsky states he will keep it confidential and gave the Plaintiff a Form BP-10 "Sensitive". Melsky further explains that this form will bypass Lt. Anderson and go directly to the Regional Office to lower the chances of retaliation by Lt. Anderson, other CO's and officials at Fort Dix.

24. On September 11, 2012, the Plaintiff gives the filled out form briefly detailing the events to CO Melsky to send to the regional office. This is also a sad day as the Plaintiff recalls events of his escape from the towers of the WTC attacks on 9/11/01 and the loss of his 23 friends.

25. On October 31, 2012, the Plaintiff is released from Fort Dix to a halfway house in Brooklyn.

26. On or about November 26, 2012, the Plaintiff receives a letter from the BOP Regional Office rejecting the Plaintiff's claim. The letter states, "*you must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level.*" The rejection letter blatantly contradicts the recommendation of CO Melsky and for the purpose of lowering retaliation by having someone in authority "outside" Fort Dix investigate the complaint.

27. On December 17, 2012, the Plaintiff writes a letter to Director Charles E. Samuels, Jr. of the Regional Office of the BOP and copying Warden Donna Zickefoose of Fort Dix complaining of the BOP deliberately frustrating the Plaintiff by stating different facts and not taking the complaint seriously. The letter resubmits the complaint to both the Regional Office and Fort Dix.

28. On or about December 27, 2012, the Plaintiff received a letter from Christina Clark, an attorney advisor at FCI Fort Dix, stating that the complaint was denied because the Plaintiff was released from Fort Dix and astonishingly, it was "untimely".

29. On or about January 14, 2013, the Plaintiff received a letter from the BOP Regional Office rejecting the complaint again for the exact same reasons as previously. If it wasn't obvious earlier, it is completely obvious at this point that the BOP engages in a deliberate practice of denying a fair forum or due process for resolving any complaints, never mind something as serious as a physical assault.

30. On July 9, 2013, the Plaintiff filed Form SF-95 with the Bureau of Prisons to satisfy the exhaustion of remedies process as required by the Federal Tort Claims Act.

31. On August 27, 2013, the Plaintiff received a letter from Brent Phipps, a paralegal with the Civil Division, Torts Branch of the DOJ. Phipps stated the form was being rejected because it was unsigned.

32. On or about September 5. 2013, the Plaintiff received a letter from Michael Tafelski, Regional Counsel with the BOP acknowledging receipt of the Plaintiff's TORT Claim, but rejecting it for failure to sign it and state a specific sum.

33. On or about November 7, 2013, the Plaintiff received a letter from Mr. Tafelski acknowledging receipt of the TORT Claim and stating under law, the BOP had six months from October 15, 2013 to respond to the complaint. As of April 24, 2014, the Plaintiff has not received any further correspondence from the BOP which now gives rise to this claim.

34. On January 29, 2014, the Plaintiff wrote an email to Mr. Percy Johnson who it was explained to the Plaintiff was investigating the assault. However, it was not disclosed to the Plaintiff to whom Mr. Johnson reported or was employed.

35. On February 18, 2014, the Plaintiff received an email from Mr. Johnson identifying himself as a Special Investigative Agent and his email address ended with BOP.gov which in all likelihood confirmed he was employed by the BOP. Mr. Johnson corresponded briefly with the Plaintiff, but never met in person over the next few weeks. On or about March 2014, Mr. Johnson called the Plaintiff and told him his investigation was completed. He told the Plaintiff that, "something definitely went down" and that the Plaintiff's complaint was "pretty detailed." Mr. Johnson told the Plaintiff, "to commence with his civil lawsuit and hire a lawyer and to have the lawyer request a Freedom of Information Act request to access his records of the investigation."

36. On February 26, 2013, the Plaintiff also reached out to the DOJ Ombudsman's Office to seek assistance and was denied.

37. Over the course of this entire period, the FBI had been informed by either the Plaintiff or the Plaintiff's family about the assault and racial profiling. The FBI has categorically refused to investigate the assault stating that, "it wasn't their jurisdiction". Furthermore, they refused to identify themselves for "security reasons". The FBI was contacted in their main office in Washington DC, the Newark Office and New York Office and every single agent refused to offer any assistance.

## V. Violations

### Count One

### Violations of FTCA Rule 1346(b)

38. Congress, by enacting legislation, sought to hold accountable bad actors who were employed by the United States Government and who violated and abused their authority and the faith of its citizens by enacting the Federal Tort Claim Act

39. Defendants DOJ, Bureau of Prisons, the FBI, Eric H. Holder, Lt. Anderson, Warden Donna Zickefoose, and four John Does engaged, are engaging or are about to engage in acts or practices in Violation of FTCA 1346(b).

40. Furthermore, the BOP is a Government Agency. Pursuant to 28 USC 2401(b), on July 9, 2013, it was served with Form 95 detailing the complaint. Subsequently, the BOP eventually acknowledged receipt of the TORT Claim on October 15, 2013. Pursuant to 28 USC 2675 (a), the BOP failed to reply to the TORT Claim and should be treated as a denial which now gives rise to this compliant.

**Count Two**

**Violations of USC Title 42 Section 1983**

41. The Defendants have engaged, are engaging or will continue to engage in Violations of USC Title 42 Section 1983 whereas the Defendants, "*deprived the Plaintiff of rights, privileges, or immunities guaranteed under federal law or the US Constitution.*"

**Count Three**

**Violations of the Admission and Orientation Inmate Handbook**

42. The Admission and Orientation Inmate Handbook is published by the BOP and FCI Fort Dix and distributed to every single inmate to detail rights and responsibilities. The Defendants blatantly violated the Plaintiffs civil and medical rights.

**VI    Relief Requested**

Wherefore, Vincent McCrudden respectfully requests that the Court enter:

a) An order of suspension of all individually named defendants until such time all the facts and allegations are adjudicated.

b) An order requiring Special Investigative Agent Percy Johnson and the BOP to turn over all investigative records to the Plaintiff.

c) An order directing Defendants to pay civil monetary penalties in the amount of no less than USD $1,000,000 (one million dollars) for harassment, conscious pain and suffering, gross negligence, civil rights violations and physical, emotional and mental injury due to the Defendants illegal actions and abuse of authority.

d) A request for a jury trial

Dated: April 25, 2014

Respectfully Submitted,

*[signature]*  6/30/2014
 (VM)

Vincent McCrudden
45-45 Center Boulevard
Apartment 1013
Long Island City, New York 11109
(646) 220-9900
vm@alnbri.com

# Exhibit A

## Assault & Discrimination Claim (Handwritten 9-2-2012)

On August 31, 2012 at around 1:50pm, I handed my Ft. Dix ID card in exchange for a basketball in my Unit (#5751) which I had done numerous times before without incident. The CO in charge at the time was Mr. Darville who later told me he usually works in the business office.

At approximately 3:30pm upon compound recall, I was in the process of promptly walking back to my Unit after shooting baskets on the outside basketball courts. I was stopped by an officer, later identified as CO Harrell, who wanted to know where I got the basketball. He wanted to know if I stole it? Before I could answer, he instructed me to throw it over the fence directly in front of me which was near the outdoor weight room. I explained that the ball was from my Unit and I had exchanged my ID for it. He replied, "you're a fucking liar because no units have basketballs." I quickly replied that yes indeed they have basketballs as I had borrowed them from different Units many times before. He responded, "if I was a wise guy or something and who did I think I was talking to?" He also asked if I was calling him a liar. Before I could answer, he instructed me to follow him to the Lieutenants office which was about 30 yards away. As we walked I asked him politely for his name. I thought he said Harold or Howell as he mumbled to himself, and I found out later it was Harrell. He was a black male about 5"10 200 pounds and wore a navy blue T-Shirt and shorts. He looked to be about 45-50 years old. He asked me again for my ID and I said I had exchanged it for the ball.

We walked into the Lieutenants office which was the first door on the left as we entered the building. I had never been there before. CO Harrell immediately started to fabricate and formulate lies. "Lieutenant I have a problem with this inmate. He stole a basketball, disobeyed a direct order, and treated me disrespectfully." Upon hearing this fabrication, I interrupted and laughed and asked if he was going to flat out lie?" Immediately, Lt. Anderson, a black male about mid 50's and 5'7 and 160 pounds dressed in a white shirt with his name on it responded aggressively. He told about 4-5 CO's surrounding me, I believe all black males in light blue shirts with their names on it, to "take me out and handcuff me." As the 4-5 CO's roughed me up, grabbing me and pushing me up against the cinder block wall in the hallway, Anderson continued like a maniac screaming, "who do you think you are? Coming into my office and disrespecting me by laughing. Interrupting my officer. Put him up against that wall and handcuff him. Being an older guy you should know better. You think you're a tough guy? Oh, I see you have contraband (referring to my radio which is worn all over the compound.) You fucked with the wrong guy today. You are going to be written up and you're going to the hole. I am going to mess up your whole fucking Labor Day weekend boy." He loudly continued, "turn him around. Boy, you messed with the wrong guy today. I am going to mess up your whole weekend. Oh, I see you have nothing to say now hey tough guy? I then went to speak, but he quickly interrupted me shouting orders, "turn him around again (they turned and pushed me around violently and pressed my head against the cinder

block wall again). He continued to rant and rave and then ordered them to turn me around again to face him. He got right up to my face and stated, "you're lucky that wasn't me out there. I would have used force on you (threatening me). You wouldn't be no tough guy after I got done with you boy. I hope you aren't in here for what I think you're in for. (I believe referring to being stereo typed and profiled as a child molester). Hey, check this guy out. Find out what he's here for. (Shouting instructions to someone in the office.)

After a couple of minutes, I then heard him leaving the hallway and he threatened me, "I am going to fuck up your whole labor day weekend boy." After a few minutes, a white Lieutenant named Sheridan, about 6'0, 240 pounds with grey hair and about early 60's addressed me from the same office. "Are you calmed down now?" I had never raised my voice nor resisted any of their violent attack, so I ignored his question. He then asked the officers to turn me around and instructed the officers to take the cuffs off of me. As one CO was taking the cuffs off of me he asked when I was going home. I said October. Then Sheridan shouted, "McCrudden you are going home in January?" I replied that was my satisfaction date, but I expected to leave FT. Dix in October. He motioned to come into the office as he was seated. He said, "I am not going to write you up or send you to the hole." He them asked me to be more respectful to his officers in the future and to go see Harrell after the count. I then asked if I could speak.

I said, "I have been here for four months. I have been locked up 2 years and never received a "shot" or been disrespectful during my incarceration. I simply did what I thought was the right thing, which I had done many times before without incident. I gave my ID in exchange for a basketball at my Unit. I shot some baskets in the outdoor court. In fact, a week earlier, I had stopped by the recreation office and the same CO was in there and I had asked for a pump to inflate the ball. I was returning promptly for recall. I was never disrespectful and was simply explaining the situation and what I had done earlier." He excused me without incident.

I went back to my Unit. I saw Mr. Darville who was at least partially aware of the situation and he gave me my ID back. I explained briefly from my perspective what happened and that basically I was physically assaulted for no reason. He seemed very sympathetic and offered his name if I should need anything and told me he worked in the Business office.

After the count at around 7pm, I walked hesitantly to the Recreation Office to see CO Harrell as ordered. I say hesitantly because I had no idea what CO Harrell had in mind for seeing me, and was now fully aware that he would outright lie at the drop of a hat. Thankfully, as I knocked, I saw Lt. Sheridan and I was relieved I would not be alone with Harrell. Sheridan instructed me to go pick up all the basketballs from all the Units and Harrell handed me two clear plastic garbage bags. There was also an inmate sitting in the room. Sheridan and Harrell were talking on their walkie-talkies and it appeared some Units had already sent back the basketballs. They asked me how many basketballs were returned from #5711 and I said I did not know. As I walked back to the office, I saw Sheridan who motioned to a cart and said they had already picked up all the balls. I returned the two plastic bags to Harrell without comment.

I has suffered some abrasions on my nose, cheek and knee from being violently pushed against the wall by the four officers. I also had cut my inside lower lip. Most importantly, my right shoulder was in excruciating pain. Because I am not allowed to go to medical that night, I waited until the next day for the allowed time slot of 6:30 – 6:45 AM. I was informed by Ms. Johnson at the window that no medical is offered on the weekends. Basically, I was denied medical care for my injuries. Besides my physical injuries, I am emotional distraught from the assault.

Since CO Harrell is black, Lt. Anderson is black and I believe all the CO's who assaulted me were black, I could be the victim of racial discrimination and a hate crime which is a federal violation.

Also, because of what Lt. Anderson said, "I hope you're not in here for what I think you are in for" is problematic. He could be targeting child molesters. He may have stereo typed and profiled me wrongly as a child molester which could have led him to order the assault against me.

Additionally, Lt. Andersons comment of, "I would have used force on you" is a direct threat of physical violence against my person. This is additionally cowardice as he shouted this threat within inches of my face with my hands cuffed behind my back unable to defend myself, and of course abusing his authority and having four large CO's act as his goon squad. I believe other CO's may have witnessed this attack and know of at least one, CO Morey who was there. Hopefully there were cameras as well that may have picked up the assault.

I am at Ft. Dix partially due to the embellishment, lies and misinterpretation of one of the counts I was forced to plead guilty to which was an indirect threat at best. I was sentenced to 28 months in prison as a first time felon for this threat. I want to see how much time Lt. Anderson will serve for a direct threat as a federal officer on federal property.

Respectfully,

Vincent McCrudden

#58588-053

Completed September 4, 2012

Judge Robert B. Kugler
United States District Court
District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

RECEIVED
JUL -7 2014
ROBERT B. KUGLER
U.S. DISTRICT JUDGE

June 30, 2014

Vincent McCrudden – Pro Se

"Plaintiff"

Civ. No. 14-3532 (RBK) (AMD)

v.

United States of America, et al.

"Defendants"

## Compliance with Courts Order

Judge Kugler,

  Enclosed please find a copy of my signed full complaint and exhibit as you have ordered. I brought the full complaint to the Pro Se Office in the Southern District of New York, and had no idea all the pages of the complaint were not copied electronically. This is very suspicious.

  I have also enclosed a copy of a request to allow me access to CM/ECF and/or PACER so that I will be notified in the future if there is any activity in this case. I hope you will approve it.

Regards,

Vincent McCrudden – Pro Se
45-45 Center Boulevard, Apt. 1013
Long Island City, New York 11109
(646) 220-9900
vm@alnbri.com