UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT MCGRUDDEN, | : |
| Plaintiff, | : Civ. No. 14-3532-RBK-AMD |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, et al., | : |
| Defendants. | : |

**ROBERT B. KUGLER, U.S.D.J.**

This matter is before the Court on a motion by Defendants Lieutenant Joseph Anderson and the United States of America (collectively, "Defendants") for summary judgment. *Pro Se* Plaintiff Vincent McGrudden's Amended Complaint brings claims against Defendant Anderson pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) for violations of his rights under the Eighth Amendment and against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, for assault and battery. For the reasons expressed below, the Court will grant Defendants' motion for summary judgment.

**I. BACKGROUND**

On August 31, 2012, while an inmate at FCI Ft. Dix, Plaintiff exchanged his ID card for a basketball in his housing unit. Am. Compl., Ex. A. Officer James-Devon Darville, who usually works in the business office, was covering the housing unit that day. Taylor Decl., Ex. B, Darville Dep. 6:6-12, 13:12-16:20. Officer Darville signed out the basketball to Plaintiff.

1

Darville Dep. 13:12-15:1. Plaintiff took the basketball to the recreation area, where he spent the next hour and a half shooting basketballs. Am. Compl., Ex. A.

After shooting baskets, at approximately 3:30 p.m., Plaintiff was returning to his unit with the basketball when he was stopped by Corrections Officer David Harrell ("Harrell"). Am. Compl., Ex. A; Taylor Decl., Ex. C, Harrell Dep. 15:15-17:18. Harrell asked Plaintiff where he got the basketball and instructed Plaintiff to throw it over a fence into the recreation area. Taylor Decl., Ex. D, Pl.'s Dep. 29:2-7. Plaintiff informed Harrell that the basketball was from his unit, and attempted to explain that he had exchanged his ID for it. Am. Compl., Ex. A. Harrell replied, "you're a fucking liar" and stated that housing units do not have basketballs. *Id.*; Pl.'s Dep. 29:2-7. Harrell then took Plaintiff to Defendant Anderson's office. Officer Harrell did not make physical contact with Plaintiff during the walk to the Lieutenant's Office. Pl.'s Dep. 31:15-25.

Upon entering Defendant Anderson's office, Harrell stated, "I have a problem with this inmate. He stole a basketball, disobeyed a direct order, and treated me disrespectfully." Am. Compl., Ex. A; Pl.'s Dep. 34:8-12. At that point, Plaintiff concedes that he "interrupted and laughed" and asked Harrell if he was "going to flat out lie." Compl., Ex. A; Pl.'s Dep. 34:21-22. Defendant Anderson then "flipped out" and the next thing Plaintiff knew, he was "getting tackled from behind." Pl.'s Dep. 35:5-6. Lieutenant Anderson instructed some unknown officers to handcuff Plaintiff and remove him from the office. *Id.* at 36:11-20, 72:16-19.

At that point, Plaintiff felt hands grab him. Pl.'s Dep. 37:5-12. He described feeling a "violent tug, a violent pull," and that "they kind of tugged" at a leather pouch he wore around his neck and at his shirt. *Id.* at 37:15-19. Plaintiff was taken out of the room and into the hallway, where they "threw [him] against the cinderblock wall" and handcuffed him. *Id.* at 38:2-15.

Plaintiff was pushed into the wall head and shoulder first, then "kick[ed] a little bit or push[ed]," and felt his "whole body . . . being pressed up against the wall." *Id.* at 39:9-18. Plaintiff was never punched or taken to the floor. *Id.* at 41:22—42:4. Lieutenant Anderson then screamed at Plaintiff about disrespecting him and told Plaintiff that he was going to "ruin your whole weekend." *Id.* at 40:12-25.

According to Lieutenant Anderson, while in the office, Plaintiff was belligerent and talking while Anderson was speaking. Anderson Dep. at 11:21-24. Anderson testified that Plaintiff was not calm and was "moving around so [Anderson] restrained [Plaintiff]." *Id.* at 12:1. Lieutenant Anderson stated that he was the one who handcuffed Plaintiff. Anderson further stated that Plaintiff "was really combative" and "wouldn't listen to anything [Anderson] was saying," but that Plaintiff did calm down after being restrained. *Id.* at 14:9-12. According to Lieutenant Anderson, he was the only one who physically touched Plaintiff. *Id.* at 28:20-23.

Plaintiff suffered "abrasions on [his] nose, cheek and knee...cut [his] inside lower lip...[and his] right shoulder was in excruciating pain." Compl., Ex. A. Plaintiff attempted to go to medical the next day, but because no medical services are offered on the weekends, he did not receive care for his injuries. *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When the Court

weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080 (3d Cir.1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner,* 247 F. App'x. 353, 354 (3d Cir. Sept.17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 233 (3d Cir.2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

## III. DISCUSSION

Defendants argue that Lieutenant Anderson is entitled to qualified immunity because Plaintiff cannot establish a violation of his constitutional rights. Specifically, Defendants assert that the force applied to Plaintiff was *de minimis* and there is no evidence of wrongful intent. As such, Defendants argue, Plaintiff cannot establish a violation of his Eighth Amendment rights. Defendants further argue that the same analysis applicable to the Eighth Amendment claim applies to Plaintiff's state-law and FTCA claims and that the United States is entitled to judgment on that claim as well. The Court addresses Plaintiff's claims in turn.

### A. Eighth Amendment Claim Against Lt. Anderson

Defendants argue that any force employed against Plaintiff was *de minimis* and did not rise to the level of an Eighth Amendment violation. They further assert that there is no evidence of wrongful intent. Defendants therefore contend that Lieutenant Anderson is entitled to qualified immunity because Plaintiff cannot establish that Anderson violated his clearly established constitutional rights.

1. Excessive Force Standard

The use of excessive force against a prisoner may violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Wilkins v. Gaddy,* 559 U.S. 34, 34 (2010) (per curiam); *Hudson v. McMillian,* 503 U.S. 1, 4 (1992). "The test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Giles v. Kearney,* 571 F.3d 318, 326 (3d Cir.2009) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). The district court should consider: (1) the need for the force; (2) how much force was used in relation to the need; (3) the extent of the

inflicted injury; (4) the extent of the safety threat, as reasonably perceived by the responsible officials on the basis of the facts they knew; and (5) efforts made to ameliorate the severity of a forceful response. *Id.* (citing *Whitley,* 475 U.S. at 319).

2. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Put differently, "immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, ⎯⎯ U.S. ⎯⎯, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (citing *Mullenix v. Luna*, ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015)).

The Third Circuit uses a two-prong inquiry to determine whether a government official is entitled to qualified immunity. *Pollock v. The City of Phila.*, 403 Fed. App'x 664, 669 (3d Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). The first prong requires a court to "decide whether the facts . . . make out a violation of a constitutional right." *Id.* (quoting *Pearson*, 555 U.S. at 232). Under the second prong, a court must "decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (quoting *Pearson*, 555 U.S. at 232) (internal quotation marks omitted). Courts are permitted to use discretion as to which prong to apply first. *Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009) (citing *Pearson*, 555 U.S. at 232).

On summary judgment, qualified immunity is a question of law, but disputed issues of material fact will preclude finding qualified immunity. *Id.* at 327 (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion ... rests on a

factual presumption that is inappropriate on summary judgment"); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

   3. <u>Analysis</u>

Plaintiff alleges that Lieutenant Anderson instructed unknown officers to handcuff him or "get [Plaintiff] out of here," at which point he felt hands grab him. Pl.'s Dep. 37:5-12. He described feeling a "violent tug, a violent pull," and that "they kind of tugged" at a leather pouch he wore around his neck and at his shirt. *Id.* at 37:15-19. Plaintiff was taken out of the room and into the hallway, where they "threw [him] against the cinderblock wall" and handcuffed him. *Id.* at 38:2-15. Plaintiff was pushed into the wall head and shoulder first, then "kick[ed] a little bit or push[ed]," and felt his "whole body . . . being pressed up against the wall." *Id.* at 39:9-18. Plaintiff was never punched or taken to the floor. *Id.* at 41:22—42:4. The only instruction Lieutenant Anderson gave was to handcuff Plaintiff or to get him out of his office; he gave no further instructions for people to "lay hands" on Plaintiff. *Id.* at 72:16-23.

Lieutenant Anderson's version of events differs from that of Plaintiff. According to Lieutenant Anderson, Plaintiff was belligerent and talking while the Lieutenant was talking. Anderson Dep. at 11:21-24. Anderson testified that Plaintiff was "moving around so [Anderson] restrained [Plaintiff]." *Id.* at 12:1. In other words, Lieutenant Anderson recalls that he was the one who handcuffed Plaintiff. Anderson further stated that Plaintiff "was really combative" and "wouldn't listen to anything [Anderson] was saying," but that Plaintiff did calm down after being restrained. *Id.* at 14:9-12. According to Lieutenant Anderson, he was the only one who physically touched Plaintiff. *Id.* at 28:20-23.

Though there is a dispute regarding these facts, the Court finds that the dispute is not one of a *material* fact. An issue is "material" to the dispute if it could alter the outcome of the case under the governing law. *See Liberty Lobby, Inc.*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). As discussed below, the Court concludes that under either version of events, the evidence is insufficient to support Plaintiff's Eighth Amendment claim.

Defendants assert that, viewing the facts in the light most favorable to Plaintiff, the force exerted against Plaintiff was *de minimis*. The Court agrees. As discussed above, prison officials' use of excessive force may violate the Eighth Amendment. However, not "every malevolent touch gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. If the use of force is *de minimis*, there is no Eighth Amendment violation, unless the use of force is "repugnant to the conscience of mankind." *Id.* at 9–10 (citation omitted); *see also Wilkins*, 559 U.S. at 37-38; *Brooks v. Kyler*, 204 F.3d 102, 107 (3d Cir. 2000). Thus, even where force may have been used unnecessarily, an Eighth Amendment claim may not succeed if "no reasonable jury could find that the *de minimis* force utilized . . . was of a sort repugnant to the conscience of mankind in violation of the Eighth Amendment." *Washam v. Klopotoski*, 403 F. App'x 636, 640 (3d Cir. 2010) (internal quotations omitted).

The force Plaintiff alleges – being "violently" grabbed and pulled, shoved and pressed against a wall, and handcuffed – does not rise to the level of a constitutional violation because it was not the kind of force that is repugnant to the conscience of mankind. *See e.g.*, *Washam*, 403 F. App'x at 640 (force was *de minimis* where officer knocked books out of plaintiff's hands, slammed him to the ground, and handcuffed him); *see also Taylor v. Sanders*, 536 F. App'x 200, 202 (3d Cir. 2013) (finding that plaintiff's claim that he was pushed and punched in the back was

8

not repugnant to the conscience and did not amount to a constitutional claim); *Carson v. Mulvihill*, 488 F. App'x 554, 562 (3d Cir. 2012) (finding that plaintiff's allegations that officer pushed his wheelchair rapidly and harshly through his cell door, causing him to fall sharply onto his bed inside the door amounted to, "at most, a malevolent shove" that did not rise to the level of a constitutional violation). Here, because the force employed against Plaintiff was *de minimis*, he cannot make out a claim for an Eighth Amendment Violation.

Moreover, Plaintiff's account fails to establish a constitutional violation for an additional reason which is related to the analysis of his claims under Lieutenant Anderson's version of the facts. Plaintiff alleges that Lieutenant Anderson ordered other officers either to handcuff Plaintiff or to "get him out of" the office. Plaintiff specifically states that Lieutenant Anderson did not physically touch him and that Anderson gave no other instructions or orders regarding physical contact with Plaintiff. Under Plaintiff's version of events, Lieutenant Anderson cannot be liable for employing excessive force against Plaintiff because Plaintiff does not allege that Anderson used any force against him, or that he ordered other officers to subject Plaintiff to excessive force.

"In order for liability to attach under [*Bivens*], a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard,* 532 F. App'x 78, 81 (3d Cir. 2013) (per curiam) (citing *Rode v. Dellaciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). "[L]iability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (citation omitted). Here, Plaintiff cannot establish that Lieutenant Anderson was personally involved in a violation of his federal rights. First, as discussed above, the force to which Plaintiff was subjected was *de*

*minimis* and insufficient to make out a claim for a constitutional violation.  Second, under Plaintiff's version of events, Lieutenant Anderson did not employ excessive force against Plaintiff because he never physically touched him.  Nor did Lieutenant Anderson direct his subordinates to employ excessive force because, according to Plaintiff, he instructed them only to "handcuff" Plaintiff or to "get him out of" the office.  Finally, Lieutenant Anderson cannot be found to have acquiesced in his subordinates use of excessive force when the force used cannot be found to have been excessive.  As such, there is no basis for Plaintiff's claim that Lieutenant Anderson's personally violated Plaintiff's constitutional rights.

Given this analysis, viewing the facts in the light most favorable to Plaintiff actually may require analyzing the facts as recounted by Lieutenant Anderson.  Under Anderson's account, he was personally involved in at least whatever force was used to handcuff Plaintiff, therefore overcoming the proscription for claims based on *respondeat superior* or the hurdles of supervisory claims.  However, that force also does not rise to the level of constitutionally violative excessive force.  That being the case, whether the jury accepted Plaintiff's version of events or that of Lieutenant Anderson, a reasonable jury could not find that Anderson violated Plaintiff's constitutional rights.  Thus, as discussed above, this disputed fact—*i.e.*, who it was that physically engaged and handcuffed Plaintiff—is not material to the outcome of this case and is not enough to withstand summary judgment.  For all of these reasons, the record does not establish that Lieutenant Anderson violated Plaintiff's clearly established constitutional rights and he is therefore entitled to qualified immunity.  Accordingly, summary judgment will be granted on Plaintiff's Eighth Amendment claim against Lieutenant Anderson.

B. **Federal Tort Claims Act**

Pursuant to the FTCA, Plaintiff brings a state-law assault and battery claim against the United States. Defendants argue that he United States is entitled to summary judgment on this claim because the failure of Plaintiff's excessive force claim makes the FTCA claim unsustainable. The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, "operates as a limited waiver of the United States' sovereign immunity." *White-Square v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). The FTCA allows claims against the United States for money damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Although the FTCA waiver of immunity generally does not apply to claims of assault, battery, false imprisonment, false arrest, and malicious prosecution, among other intentional torts, that rule is not applicable to investigative or law enforcement officers. *Couden v. Duffy*, 446 F.3d 483, 499 (3d Cir. 2006) (citing 28 U.S.C. § 2680(h)). As Defendant United States' alleged misconduct occurred in New Jersey, New Jersey tort law applies to Plaintiff's claims under the FTCA. *See Ciccarone v. United States*, 486 F.2d 253, 257 (3d Cir. 1973).

Law enforcement officers, in New Jersey and elsewhere, hold a privilege to use reasonable force in the exercise of their duties even though, for a civilian or private citizen, that same physical contact or force would be considered battery. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) ("Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force."); *State v. Fowlkes*, No.

11

A-3639-06T4, 2010 WL 86412, at *6 (N.J. Super. Ct. App. Div. Jan. 12, 2010) (corrections officers' use of force is permitted by law when for the purpose of and to the extent necessary to further the officers' responsibilities) (citing N.J. STAT. ANN. 2C:3-8). Indeed, "[u]nder New Jersey law, a law enforcement officer effecting a lawful arrest or search 'may use such force as is reasonably necessary under the circumstances.'" *Hanson v. United States*, 712 F. Supp. 2d 321, 329 (D.N.J. 2010) (citing *Hill v. Algor,* 85 F.Supp.2d 391, 411 (D.N.J. 2000) (citing *State v. Williams,* 148 A.2d 22, 29 (1959)).

New Jersey's application of the reasonably necessary standard, which aligns with the Fourth Amendment, has been determinative in New Jersey courts' determinations of assault and battery claims against police officers. *Id.* at 330 ("Where a police officer uses excessive force in effectuating an arrest, that officer may be liable for assault and battery.") (citation omitted); *see also*, *Ptaszynski v. Ehiri*, No. A-4349-04T5, 2006 WL 2346012, at *1 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (concluding that the court's dismissal of plaintiff's § 1983 claims based on the objective reasonableness of the officers' conduct disposed of plaintiff's assault and battery claims as a matter of law). Similarly, "[t]hough not expressly addressed by the New Jersey courts, . . . New Jersey courts would look to the factors used to assess force under the Eighth Amendment when faced with a tort claim involving the use of force by a law enforcement officer against a prisoner." *Hanson*, 712 F. Supp. 2d at 330. The Court discussed those factors above.

Here, as discussed above, the force alleged to have been employed against Plaintiff was not excessive under the Eighth Amendment. In addition, Plaintiff has not alleged that Lieutenant Anderson, whose action he claims is the basis for his FTCA claim, *see* Pl.'s Opp. Br., Dkt. No. 56, at 12, physically contacted him. Because the evidence does not sustain Plaintiff's *Bivens* claim for excessive force, Plaintiff's assault and battery claims must also fail. *See Ptaszynski*,

2006 WL 2346012, at *1. Accordingly, summary judgment will be granted on Plaintiff's FTCA claim.

### C. John Doe Defendants

Finally, the Complaint lists as Defendants Four John Does. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party." A court may drop John Doe defendants under this rule. *See Blakeslee v. Clinton County,* 336 Fed. Appx. 248, 250 (3d Cir. 2009); *Adams v. City of Camden,* 461 F.Supp.2d 263, 271 (D.N.J. 2006). Because discovery is now complete, because Plaintiff has failed to identify any John Doe Defendants, and because, as he acknowledges (Dkt. No. 56 at 5) he has not moved to amend the Complaint, the Court dismisses the Four John Does.

## IV. CONCLUSION

For the foregoing reasons, Defendants motion for summary judgment will be granted. An appropriate order will be entered.


DATED: June 8, 2018

                                                   s/Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge